# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

BOBBY TRIPP, )
)
         Plaintiff, )
)
v. ) Case No. 04-0497-CV-W-FJG
)
CITICORP CREDIT SERVICES, INC., )
)
         Defendant. )

## ORDER

Currently pending before the Court is the Defendant's Motion to Compel Arbitration and to Stay Proceedings (Doc. # 15).

Plaintiff was employed by defendant Citicorp Credit Services, Inc. ("CCSI") from January 3, 1989 until February 28, 2004. In October 2001, the company instituted a Dispute Resolution Policy and an Arbitration Policy. On October 16, 2001, plaintiff acknowledged receiving the policies. The Arbitration policy specifically states that the employees' continued employment constituted acceptance of the Arbitration Policy. The Arbitration Policy also stated that it covered all employment disputes that an employee or former employee might have with the Company and that it was the "exclusive forum for the resolution of all employment disputes based on legally protected rights (i.e. statutory, contractual or common law rights) that may arise between an employee or former employee and U.S. Consumer Group or its current and former parents, subsidiaries and affiliates . . .." The Arbitration Policy was also contained in an Employee Handbook that plaintiff acknowledged receiving on July 1, 2002. In his signed receipt, plaintiff acknowledged:

> I understand that this *Handbook* contains a provision that requires me to submit employment-related disputes to binding arbitration (see Appendix). I have read that provision carefully. I also understand that no provision in this *Handbook* or elsewhere is intended to constitute a waiver, nor be construed to constitute a waiver, of the Company's right to compel arbitration of employment-related disputes.

Plaintiff agrees that he signed an Acknowledgment Form regarding receipt of the Company's Dispute Resolution and Arbitration Policy and that he reaffirmed his acknowledgment of the policy by way of receipt of the Company's handbook. However, he argues that the agreement to arbitrate "in a standardized form on a take it or leave it basis is an adhesion agreement." He also argues that the language of both the dispute resolution procedure and the arbitration program is so one sided that it is unconscionable and unenforceable.

"Whether an arbitration agreement is valid is a matter of state contract law." Farber v. Menard, Inc., 367 F.3d 1048 (8th Cir. 2004).

> In Missouri, an adhesion contract, as opposed to a negotiated contract, has been described as a form contract created and imposed by a stronger party upon a weaker party on a take this or nothing basis, the terms of which unexpectedly or unconscionably limit the obligations of the drafting party. . . . Adhesion contracts usually involve the unequal bargaining power of a large corporation versus an individual and are often presented in pre-printed form contracts. . . . But they are not inherently sinister and automatically unenforceable. . . . Because of the bulk of contracts signed in this country are form contracts –a natural concomitant of our mass production-mass consumer society-any rule automatically invalidating adhesion contracts would be completely unworkable. . . . Rather, our courts seek to enforce the reasonable expectations of the parties. . . .Only those provisions that fail to comport with those reasonable expectations and are unexpected and unconscionably unfair are unenforceable. . . . Because standardized contracts address the mass of users, the test for reasonable expectations is objective, addressed to the average member of the public who accepts such a contract, not the subjective expectations of an individual adherent.
>
> Swain v. Auto Services, Inc., 128 S.W.3d 103, 107 (Mo.App. 2003)(internal

citations and quotations omitted). In the instant case, the Court does not find that the Dispute Resolution and Arbitration Policy is an adhesion contract. Even though their was no negotiation and the policy was presented in a standardized form by the employer who was in a superior bargaining position, the Court does not find that this alone makes it unenforceable. An average member of the public would not find it unreasonable to be asked to sign a Dispute Resolution policy which he had not been given an opportunity to negotiate. Signing the policy was a condition of plaintiff's continued employment with the company and all employees were required to sign the policy. Therefore, the Court does not find that this makes policy an adhesion contract.

Plaintiff also argues that the dispute resolution policy is unconscionable because the Company is not required to follow the program if it wishes to terminate an employee. Additionally, plaintiff argues that the policy is unconscionable because the Company is free to modify or terminate the program at any time.

In Faber, 367 F.3d 1048, the Court stated, "[w]e have made clear that when reviewing an arbitration clause, we ask only (1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement." Id. at 1052. The Court noted that whether a particular agreement is valid is a matter of state law. In Johnson v. Long John Silver's Restaurants, Inc., 320 F.Supp.2d 656 (M.D.Tenn. 2004), the Court applying Missouri law, stated:

> A contract is invalid when there is both procedural and substantive unconscionability. . . .Procedural unconscionability arises during the contracting process when there is fine print in the contract, there has been some misrepresentation, or there is unequal bargaining power. . . . Substantive unconscionability, on the other hand, occurs when the contractual terms are unduly harsh. . . .Provisions that an objective reasonable person would find unexpected and unconscionably unfair are

3

>   unenforceable. . . . Stated differently, a contract is unconscionable which
>   no man in his right senses would make on the one hand and which no fair
>   honest man would accept on the other.

Id. at 665 (internal citations omitted). In that case the Court found that the dispute resolution policy was not unconscionable because it advised employees that they could consult with an attorney, could review the program before agreeing to its terms and the policy was written in plain language that a lay person could comprehend and did not contain any fine print. The Court found that:

>   A reasonable employee would expect that the paperwork he signed at the
>   beginning of his employment would contain some company policy
>   regarding the resolution of employment disputes, including submitting
>   those disputes to arbitration. Even though the parties had unequal
>   bargaining power, the terms of the [dispute resolution program] are not
>   unusually harsh; rather, [Long John Silver] agrees to share arbitration
>   expenses, agrees not to hire an attorney if the employee does not hire an
>   attorney, and states that any modifications to the arbitration provisions of
>   the [dispute resolution program] must be mutual and in writing.

Id. at 667.

Plaintiff argues that because the Company is not required to follow the dispute resolution program if it wants to terminate an employee and because the Company is free to modify the program at any time and for any reason, the program is unconscionable. However, in his Suggestions in Opposition, plaintiff cites only cases from other jurisdictions, including the Ninth Circuit and the Northern District of Illinois.

In a recent opinion from the Missouri Supreme Court however it appears that this issue has not been definitively settled in Missouri. In Triarch Industries, Inc. v. Crabtree, 158 S.W.3d 772 (Mo. banc 2005), a party attacked an agreement to arbitrate on the basis that the arbitration clause was invalid because it was unilateral rather than mutual and it gave sole authority to the other party to decide to arbitrate and to set the rules for

4

the arbitration. The Court observed, "many state courts, and federal courts applying state law, have invalidated similar non-mutual arbitration provisions because they are so one-sided as to be illusory or unconscionable and, therefore, are unenforceable under applicable state law. . . . Other courts have upheld such clauses on the basis that the particular state's law does not require mutuality if there is otherwise sufficient consideration for the agreement considered as a whole. . . . Missouri has not addressed this issue in the context of an arbitration clause." Id. at 774-775 (internal citations omitted). The Missouri Supreme Court in Triarch did not reach the issue of enforceability or unconscionability of the clause because the court found that the trial court had correctly determined that Triarch did not have a right to demand arbitration.

After examining the Arbitration policy at issue in this case, the Court does not find that it is so one-sided or lacking in mutuality as to be deemed unconscionable. The Agreement states in part:

> This Policy does not require that U.S. Consumer Group institute arbitration, nor is it required to follow the steps of the dispute resolution procedure before taking disciplinary action of any kind, including termination. However, if an employee disagrees with any such disciplinary action and believes that such action violated his or her legally protected rights, he or she may institute proceedings in accordance with the Policy. The results of the arbitration process are final and binding on the employee and the U.S. Consumer Group.

Dispute Resolution Policy and Procedure, p. 6. A footnote to this paragraph states, "[n]othing in this provision shall be construed to negate the mutuality of this agreement to arbitrate, and U.S. Consumer Group explicitly agrees to arbitrate, pursuant to this Policy, any disputed disciplinary action after it has been taken." The Dispute Resolution Procedure also states that the rules and procedures are based on

5

the rules of the American Arbitration Association, but that some of the rules relating to fees have been modified and expanded so that costs typically shared by the parties are now paid by U.S. Consumer Group. The Dispute Resolution Policy also states that provisions permitting limited discovery have been added to "insure equal access to relevant information." Dispute Resolution Policy, p. 6. Plaintiff is correct that the U.S. Consumer Group reserves the right to revise, amend, modify or discontinue the Policy at any time in its sole discretion. However, the Policy provides that the Amendments will be either published in the Employee Handbook or will be separately released and will be effective thirty days after they are provided to the employees. Dispute Resolution Policy, p. 12.

Examining the Dispute Resolution Policy in light of Missouri contract principles, the Court does not find that it is unconscionable. As previously discussed, procedural unconscionability occurs when the parties have unequal bargaining power or there has been some misrepresentation or the agreement contains fine print. Substantive unconscionability occurs when the terms are unduly harsh. In the instant case, the parties do have unequal bargaining power, but this is to be expected in the employment context. Additionally, while there are some terms of the Agreement which would seem to indicate that the Agreement lacks mutuality, the Court finds that these provisions are minor and also would be expected in the employment context. For example, it would be nonsensical to suggest that any of defendant's employees could change or modify the agreement if they disagreed with any of its provisions. As the Court in Johnson, noted, "[a] reasonable employee would expect that the paperwork he signed at the beginning of his employment would contain some company policy regarding the resolution of

6

employment disputes, including submitting those disputes to arbitration." Id. 320 F.Supp.2d at 667. After reviewing the policy, the Court does not find that its terms are unduly harsh, but rather determines that many of the terms are very generous, such as the provision regarding the payment of fees. Therefore, the Court hereby **GRANTS** Defendant's Motion to Compel Arbitration and to Stay the Case (Doc. # 15).

The Court hereby **ORDERS** that proceedings in this case are stayed pending arbitration of plaintiff's claims. It is further **ORDERED** that the parties shall submit a joint status report to the Court on August 1, 2005, or at such time as the arbitration proceeding is concluded, whichever is earlier.


Date:  May 24, 2005         **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri           Fernando J. Gaitan, Jr.
                                United States District Judge